■ SAUNDRA SIEGELSON, Appellant, v HERMAN SIEGELSON, Respondent. — Order, Supreme Court, New York County, entered January 16, 1978, which determined that plaintiff-appellant wife, and not defendant-respondent husband, was in contempt of court and which reduced counsel fees, denied the application for alimony arrears, suspended, abated and forgave child support arrears and gave certain visitation privileges to husband with regard to infant issue, modified, on the facts and in the exercise of discretion, to grant wife judgment for $6,000 covering all alimony and support claims to the date of the entry of the judgment of divorce, and to remand for hearing on visitation and child support, and otherwise affirmed, without costs. During the pendency of this action for divorce, the parties stipulated in open court that: custody of the only child of the marriage was granted to plaintiff wife, subject to the defendant husband's right of visitation; the husband would pay to the wife $6,000 to cover all alimony arrears; would continue *pendente lite* alimony and support, as provided by a prior court order; would pay certain alimony and child support after entry of judgment; the husband would have certain visitation rights with his infant son; and the wife and infant son "shall regularly reside in the metropolitan area of the City of New York". Both parties violated the terms of this stipulation. The wife ultimately moved to Detroit, remarried and made it difficult for the husband to see his son. Husband moved to punish wife for contempt, and she cross-moved for the same relief. The Supreme Court held, *inter alia,* the wife to be in comtempt of court; that she was not entitled to alimony or child support arrears; that she was to follow the visitation provisions as provided in the original stipulation; and that, "[it] is directed that plaintiff deliver her son (from Detroit) to the defendant (in New York) once a month, and if the plaintiff refuses to bring Lee Scott (Siegelson) to New York and it costs the defendant $300.00 more or less to take a plane trip then and in that event child support will be suspended for a period of four weeks". On this record, we feel that

the wife is entitled to at least the amount of $6,000 which had been previously stipulated to cover the arrears prior to the entry of the judgment of divorce. In addition, we are not persuaded that the provisions of the court's order regarding visitation and support are in the best interests of the child. They may be so unwieldly as to encourage noncompliance. Upon a hearing, visitation and support provisions should be worked out which are more practical and equitable. Concur — Fein, J. P., Sandler, Bloom and Carro, JJ.

Ross, J., dissents in a memorandum as follows: I dissent and would affirm the order appealed from in its entirety. The parties to this action were married in New York in July 1969. There is one minor child of this union. Thereafter, the plaintiff and defendant each commenced an action for divorce. During these proceedings, the parties, in open court on September 24, 1974, entered into a stipulation, which was to be incorporated in and survive the judgment of divorce. This agreement provided in part that the defendant would pay to the plaintiff alimony arrearages in the amount of $6,000. This stipulation also established a visitation schedule and provided that the "Plaintiff * * * shall regularly reside in the metropolitan area of the City of New York. Visitation by the husband shall be exercised in the aforesaid geographical area, except during the months of July and the Christmas vacation, at which time the defendant shall not have the right of visitation unless the plaintiff is in the metropolitan area." The conditions memorialized in this stipulation were accepted without reservations. Five weeks later on November 1, a judgment of divorce was entered. Between the date of the stipulation and the date of entry of the judgment of divorce, the defendant father encountered difficulties in visiting his son. On one such occasion, the appellant mother refused to provide the defendant with an alternate visiting date after she failed to keep a prior appointment. The defendant was instructed to telephone again. When he did, defendant discovered the appellant had "furtively moved out of the City of New York * * * taking her son with her." Appellant attempts to justify this action by stressing that defendant's payments were either so erratic or were not forthcoming so as to compel her to flee. The appellant goes on to assert that she advised defendant of the impending move and that it occurred after entry of the judgment of divorce. The defendant's initial attempts to locate his family proved futile. Neighbors, building managers and in-laws would provide no assistance. Finally, in May or June, 1975, defendant learned that the appellant had moved to Detroit and had possibly married Sidney Goosen. The defendant telephoned the Goosen residence and was informed that his former wife had remarried on March 1, 1975. Furthermore, she did not want to discuss the question of visitation with defendant and he was directed to discuss any problem with the Goosens' attorney. Apparently when visitation was permitted in Detroit, a third party hired by the Goosens was always present during the time defendant and his son were together. Defendant also discovered that his son was using the surname of his new family. Thereafter, the defendant moved to hold the plaintiff in contempt for her failure and refusal to comply with and carry out the provisions of the judgment of divorce. Plaintiff then cross-moved to hold defendant in contempt for, *inter alia,* his willful failure and refusal to pay child support and alimony. After a reference the court entered the order now before us. The conduct of both parties is far from exemplary. However, in order for the appellant to invoke the equity jurisdiction of our courts, she must approach with "clean hands." Her actions belie her contentions. The stipulation which was freely entered into, and which was not merged in the subsequent judgment of divorce, specifically granted custody of the child to her "subject to the rights of visitation." A second condition required the appellant to reside in the metropolitan area. Her utter disregard of these two fundamental provisions should now bar her belated requests. She has willfully failed to provide meaningful

visitation rights to defendant. She has attempted to inhibit all visitation and when a visit was permitted, appellant utilized tactics to dampen the euphoria of the moment. It is also important to note that the appellant took no initiative to seek redress of her alleged grievances prior to initiation of action by defendant. She was apparently content to live a comfortable life in a jurisdiction far removed from this area and leave well enough alone. Appellant has attempted and is utilizing the infant child as a "hostage" in this ongoing matrimonial fray and her actions cannot be condoned. Thus my colleagues, by awarding the appellant the sum of $6,000 in alimony arrearages, are doing nothing more than placing their *imprimatur* on conduct which disregards the sanctity of prior judicial proceeding. Nor do I perceive a need to remand this matter for a hearing on visitation and child support. Special Term was correct in conditioning child support on resumption of meaningful visitation. Appellant has continually flouted the orders and directions of the court. If her conduct were to continue and the defendant required to pay support such would be tantamount to licensing this behavior. Additionally, in light of appellant's past attempts to thwart all visitation, the provision permitting defendant to reduce support by the cost of air transportation, if borne by him, cannot be deemed an abuse of discretion. Concluding, the visitations provisions, other than above, are nothing more than what was bargained for and obtained in the stipulation entered prior to divorce. Therefore, the order appealed from should be affirmed.